Entered: July 14th, 2016
Signed: July 14th, 2016



**S. MARTIN TEEL, JR.**
**U.S. BANKRUPTCY JUDGE**
SITTING BY DESIGNATION

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

In re                                )
                                     )
JASON TODD SMITH,                    )    Case No. 14-17313
                                     )    (Chapter 13)
                                     )
CINNAMON ROSE SMITH,                 )    Case No. 14-17320
                                     )    (Chapter 7)
                                     )
FREDERICK SHAWN SMITH, and           )    Case No. 14-17308
                                     )    (Chapter 13)
                                     )
CHRISTINE GAIL SMITH,                )    Case No. 14-17306
                                     )    (Chapter 13)
         Debtors.                    )
_____        )
                                     )
                                     )
ROBERT W. AUTON,                     )
                                     )
         Plaintiff,                  )
                                     )    Adversary Proceeding No.
         v.                          )    14-00461
                                     )
JASON TODD SMITH,                    )
CINNAMON ROSE SMITH,                 )
FREDERICK SHAWN SMITH, and           )
CHRISTINE GAIL SMITH,                )
                                     )    **Not for Publication in**
         Defendants.                 )    **West's Bankruptcy Reporter.**

MEMORANDUM DECISION GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
<u>AND DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Robert W. Auton brought separate adversary proceedings

against each of the debtors in the four above-cited bankruptcy

cases seeking a determination of nondischargeability for certain

debts stemming from a judgment entered in his favor by the Circuit Court for Frederick County, Maryland.  The court consolidated the adversary proceedings into a single proceeding, Adversary Proceeding No. 14-00461.

The underlying allegations brought by Auton were that the defendants (his sister Christine, her husband Frederick, their daughter Cinnamon, and their daughter's husband Jason) wrongfully took funds from Auton's mother, Betty Auton, while the defendants were helping Betty manage her finances in the year prior to Betty's death, significantly reducing the amount of Auton's inheritance.  Auton obtained a judgment in the Circuit Court for Frederick County, Maryland, against all four defendants for compensatory damages of $142,769, for punitive damages against Christine and Cinnamon of $150,000, and for punitive damages against Frederick of $50,000.

In Count One of his adversary complaint, Auton alleges that the judgment is not dischargeable because of fraud under 11 U.S.C. § 523(a)(2)(A).  In Count Two of his adversary complaint, he alleges that the judgment is not dischargeable under 11 U.S.C. § 523(a)(4) because of breach of fiduciary duty.  He now seeks summary judgment on both counts of his complaint, relying solely on the doctrine of collateral estoppel.  He also raises in his motion a claim that the punitive damages portion of the judgment is not dischargeable under 11 U.S.C. § 523(a)(6), again relying

solely on collateral estoppel.  The defendants filed an
opposition to Auton's motion and a cross-motion for partial
summary judgment which Auton opposes.  I will partially grant
Auton's motion and deny the defendants' motion for the reasons
discussed below.

I

On May 16, 2016, the court dismissed the chapter 13
bankruptcy case of Christine Gail Smith, Case No. 14-17306,
without the debtor having received a discharge.[1]  However, a
determination of nondischargeability in this adversary proceeding
as to her would have collateral estoppel effect as to any
discharge received in any future case.  Because the court
concludes that a partial summary judgment award is appropriate as
to her regarding one claim, the court will not dismiss the
adversary proceeding as to her with regard to that claim.
However, the court will issue a separate order directing the
parties to show cause why the adversary proceeding ought not
otherwise be dismissed as to her.

II

In the Circuit Court, Auton's complaint included Count I
(Equitable Claim by Charge Against Defendants Under Confidential

---

[1]   Cinnamon Rose Smith has received a discharge in her case
under chapter 7 of the Bankruptcy Code.  Jason Todd Smith's case
and Frederick Shawn Smith's case remain pending as cases under
chapter 13 of the Bankruptcy Code, but they are not yet eligible
for a discharge.

Relationship); Count II (Constructive Trust); Count V
(Fraud/Constructive Fraud); and Count VII (Restitution/Unjust
Enrichment).  The relevant portions of the underlying Circuit
Court order directing the entry of judgments are:

> Upon consideration of the pleadings, the entire record in
> this case, and the trial held on March 28, 2013, it is
> this 5th day of April, 2013, by the Circuit Court for
> Frederick County, Maryland, hereby
>
> ORDERED that judgment shall be entered against
> Defendants Christine Gail Smith, Frederick Shawn Smith,
> Cinnamon Rose Smith and Jason Todd Smith, on Counts 5 and
> 7 [i.e., Counts V and VII] of the Complaint, for fraud
> and unjust enrichment; and it is further
>
> ORDERED that judgment shall be entered against
> Defendants Christine Gail Smith and Cinnamon Rose Smith,
> on Counts 1 and 2 [i.e., Counts I and II] of the
> Complaint, for breach of fiduciary duty and breach of
> confidential relationship; and it is further
>
> ORDERED that compensatory damages in the amount of
> $142,769.00, jointly and severally, shall be paid by
> Defendants Christine Gail Smith, Frederick Shawn Smith,
> Cinnamon Rose Smith and Jason Todd Smith; and it is
> further
>
> ORDERED that punitive damages in the amount of
> $150,000.00, jointly and severally, shall be paid by
> Defendants Christine Gail Smith and Cinnamon Rose Smith,
> in connection with Count 5 [i.e., Count V] of the
> Complaint and based upon this Court's finding that with
> actual malice these Defendants wrongfully treated the
> late Ms. Betty Rose Auton's assets as though those assets
> were their own; and it is further
>
> ORDERED that punitive damages in the amount of
> $50,000.00 shall be paid by Defendant Frederick Shawn
> Smith, in connection with Count 5 [i.e., Count V] of the
> Complaint and based upon this Court's finding that with
> actual malice this Defendant wrongfully treated the late
> Ms. Betty Rose Auton's assets as though those assets were
> his own[.]

4

*See* Exh. B to Auton's Adversary Proceeding Complaint.  Beyond the
foregoing findings as to why punitive damages were appropriate,
the order contains no findings of fact.  The Circuit Court issued
an oral decision, which led to the order.  The scant findings
made in that decision, as relevant, will be discussed later.

III

Auton claims that "[t]he doctrine of collateral estoppel
precludes relitigation of the issues of fraud and breach of
fiduciary duty, and thus the underlying judgment is not
dischargeable under 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C.
§ 523(a)(4)."  Pl.'s Mot. Summ. J. ¶ 1.  He further asserts that
"[t]he facts which were actually proven at trial also demonstrate
that the debts are not dischargeable under 11 U.S.C.
§ 523(a)(2)(A) and 11 U.S.C. § 523(a)(4)."  Pl.'s Mot. Summ. J.
¶ 2.  He does not seek to prove his motion for summary judgment
by evidence obtained in this adversary proceeding, but rather he
relies exclusively on the Circuit Court judgment and "facts which
were actually proven at trial" in the Circuit Court.  The
defendants' motion seeks partial summary judgment on the grounds
that collateral estoppel cannot be invoked in Auton's favor given
the circumstances.

A

Auton argues that collateral estoppel precludes relitigation
of facts determined by the Circuit Court, and in his memorandum

5

he lists approximately four pages of facts, relevant to both his fraud and fiduciary claims, which he contends were actually determined and decided in the prior litigation. However, as discussed below, Auton cannot rely on collateral estoppel to give preclusive effect to his alleged "facts proven at trial."

"When determining whether collateral estoppel arises from a prior state court judgment, federal courts apply the law of the state in whose courts the prior judgment was entered." *Capital Hauling, Inc. v. Forbes*, 75 Fed. Appx. 170, 171 (4th Cir. 2002). Under Maryland law, "the doctrine of collateral estoppel precludes relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." *Bank of Am., N.A. v. Kissi*, No. PWG-12-3266, 2013 WL 4804824 (D. Md. Sept. 6, 2013); *see also Standard Fire Ins. Co. v. Barrett*, 395 Md. 439, 456 (2006).

Whether an issue has been "actually determined and necessarily decided" refers

> to the deliberative process of fact-finding by a fact-finding jury or judge. The fact finder receives and considers evidence on controverted issues of fact, assesses the credibility of the sources of the evidence, weighs the evidence, and, explicitly or implicitly makes findings of fact.

*John Crane, Inc. v. Puller*, 899 A.2d 879, 898 (Md. App. 2006). In other words, to successfully invoke the doctrine of collateral

6

estoppel as to his alleged facts, Auton would need to point to the Circuit Court's findings of fact, often memorialized in a written decision.  In the absence of a written decision, Auton could point to a transcript of the trial and the judge's oral decision containing findings of fact.

Auton, however, in his brief, cites to (and attaches) documents apparently filed or exchanged by the parties in the Circuit Court case, including, for example, answers to interrogatories and requests for admissions, business records such as bank signature cards and account statements, medical records, and a report with exhibits from a forensic document examiner.  But for collateral estoppel to apply to his alleged facts, he must show that the allegedly precluded facts were actually and necessarily determined by the Circuit Court and not merely litigated by the parties.  To establish this, he baldly asserts that

> [t]he Court heard testimony, accepted exhibits into the record, and ultimately agreed with Mr. Auton that based upon the evidence presented the debtors had committed fraud and that Christine and Cinnamon Smith had breached the fiduciary duties they had to Betty Auton as a result of their confidential relationship.

Pl.'s Br. Summ. J. 9.  The only citation he makes for this crucial statement is to the Circuit Court order itself, which contains scant findings of fact.  Elsewhere in his brief, he refers to a transcript of proceedings in the Circuit Court, which is marked "expedited proceedings - decision only" and dated March

7

28, 2013, the date of the trial in the Circuit Court. *See* Transcript (Dkt. No. 54-1 in this adversary proceeding, Exh. to Defs.' Mot.). However, while the transcript contains the brief oral decision as delivered by Judge Adams and a few conclusory passing comments, it contains scant findings of fact and is not evidence that the Circuit Court actually determined the extensive list of "precluded facts and issues" included by Auton in his brief.

Auton repeatedly cites *Standex International v. Bosselait (In re Bosselait)*, 63 B.R. 452 (Bankr. E.D. Va. 1986), in support of his collateral estoppel argument. In *Standex*, the plaintiff sought to invoke collateral estoppel to obtain a determination that debts arising from a court judgment in Germany were nondischargeable because of fraud and breach of fiduciary duty pursuant to § 523(a)(2) and (a)(4). 63 B.R. at 453. Auton, however, ignores both the facts and result of that case, which work squarely against him. In *Standex,* the judge denied the plaintiff's first motion for summary judgment because the plaintiff submitted the foreign judgment but failed to submit the transcript of the trial proceedings. 63 B.R. at 455. Even after the plaintiff filed a second motion for summary judgment, attaching transcripts of the trial, the court still found the plaintiff's submissions insufficient because, analogous to the instant case, "the German court made no express findings based

8

upon the elements and standards necessary to prove a dischargeability case under either § 523(a)(2) or § 523(a)(4) of the Bankruptcy Code." 63 B.R. at 454-55, 457-58. The court concluded, "Thus, this Court cannot give preclusive effect to any German court findings based upon the issues needed to prove that the debt to Standex is nondischargeable." 63 B.R. at 458.

Per *Standex*, Auton should have submitted evidence such as transcripts from the trial in the Circuit Court reflecting the Circuit Court's findings on each element of his fraud and breach of fiduciary duty claims under Maryland law, and those elements would have to be identical with the elements of his claims under § 523(a)(2) and (a)(4), before he could make a case that collateral estoppel applies to the facts underlying the Circuit Court judgment. Auton has submitted no record of the trial proceedings besides the Circuit Court judgment and the transcript of the oral decision, and both are inadequate to support the application of collateral estoppel to his alleged facts.

B

In Count One of his adversary complaint, Auton brings a claim under § 523(a)(2), which provides in pertinent part that a discharge does not apply to a debt for money or property to the extent obtained by false pretenses, a false representation or actual fraud.

There were no factual findings in the Circuit Court's order

9

explaining specifically its awarding compensatory damages for
fraud (Count V), although there were the findings related to
punitive damages, which recited that with actual malice the
defendants against whom punitive damages were awarded had
wrongfully treated the late Ms. Betty Rose Auton's assets as
though those assets were their own.  The transcript also included
the same finding regarding punitive damages but no other
meaningful findings.  I agree with the defendants that the few
times that the word "fraud" is mentioned in the transcript are
merely conclusory passing references and not relevant factual
findings.  The only mention of fraud is as follows:

> The reverse mortgage, although no longer part of the
> case, is telling because those monies were removed,
> $180,000 basically through fraudulent transfers, and I
> was here when the, we, um, sum that was put on the
> record whereby banks, notaries, settlement companies had to pay
> because those documents were not signed by Betty Auton.
> That just goes back towards both the failure to prove
> that this is what Betty wanted to do and towards the
> fraud that was basically maintained on the other members
> of Betty Auton's family.

Transcript, 4:15-23 (Exh. to Defs.' Mot.).  These two sentences
relate to claims (related to a reverse mortgage) that were no
longer part of the case at the time of the Circuit Court's
decision and thus have no bearing on the instant claims.  In
addition, the phrase "the fraud that was basically maintained on
the other members of Betty Auton's family" is too vague by itself
to comprise a factual finding that the defendants engaged in
actual fraud within the meaning of § 523(a)(2).  The transcript

10

reflects no other comments which would relate to Auton's fraud claim.

Auton compares the elements of fraud under Maryland law with the elements of a fraud claim pursuant to 11 U.S.C. § 523(a)(2)(A), determines that they are "essentially identical," and concludes that the judgment on his fraud claim must thus be given preclusive effect.  The elements of a fraud claim under Maryland law that Auton recites in his brief are

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Gourdine v. Crews*, 955 A.2d 769, 791 (Md. 2008).  However, the fraud count in the Circuit Court complaint (Count V) included no allegations of a misrepresentation upon which Auton relied to his detriment, and there is no record showing that the Circuit Court addressed fraud based on the existence of such a

11

misrepresentation.[2]

That does not end the story, though, for "actual fraud" can exist without a misrepresentation, as in the case of a fraudulent conveyance. *Husky Int'l Electronics, Inc. v. Ritz*, 136 S.Ct. 1581, 1586 (2016) ("[A]nything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'"). Nevertheless, not all fraud is "actual fraud" because the law may find fraud without the existence of wrongful intent, namely, in the case of "implied" fraud or fraud "in law." *Id.* As the adversary proceeding complaint notes, the fraud count in the Circuit Court was titled Fraud/Constructive Fraud. The issues then are (1) whether the Circuit Court found the existence of some Maryland fraud claim actually litigated and determined in the Circuit

---

[2]    Count V is titled "Fraud/Constructive Fraud" and, after incorporating other allegations of the complaint, the allegations are:

73.  There exists a legal and/or equitable duty, arising out of a relationship where trust and confidence must exist, i.e. a fiduciary and/or confidential relationship.

74.  Defendants breached their duty by conduct that deceives and/or violates a confidence and/or injures the public interest.

75.  Plaintiff has suffered damages as a result of these actions, which were taken with actual malice and willfulness.

76.  As a result of Defendants' actions, Plaintiff has suffered economic loss, financial deprivation, emotional trauma, pain and suffering, and other injuries.

Court, and (2) if so, whether the fraud for which a judgment entered was "actual fraud," a fraud done with wrongful intent, or, instead, some form of constructive fraud.

As already discussed, we do not have a record of the trial (other than the decision) to see how the claims were framed at the trial, but the court's order after the trial indicated that judgment was being entered on Count V "for fraud."  Rightly or wrongly, the Circuit Court found that a claim for fraud had been proven under Maryland law.  *Husky* treats common law claims of fraud as "actual fraud" if the fraud was done with wrongful intent.

As to the issue of whether the fraud entailed wrongful intent, the Circuit Court's order found that "actual malice" existed in awarding punitive damages against some of the defendants in connection with Count V, the fraud count.  Under *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 837 (Md. 2004), and *Owens-Illinois v. Zenobia*, 601 A.2d 633, 652 (Md. 1992), punitive damages are recoverable only when a plaintiff has demonstrated by clear and convincing evidence that the defendant acted with "actual malice."  In turn, "actual malice" does not include reckless or negligent infliction of injury, and requires "knowing and deliberate wrongdoing."  *Darcars*, 841 A.2d at 837 (discussing *Ellerin v. Fairfax Savings, F.S.B.*, 652 A.2d 1117 (Md. 1995)).  *See also Hoffman v. Stamper*,

13

867 A.2d 276, 301 (Md. 2005) ("What is needed to support an award of punitive damages is conscious and deliberate wrongdoing."). Does the existence of knowing and deliberate wrongdoing warrant finding collateral estoppel to apply?

In the case of Cinnamon Rose Smith, Frederick Shawn Smith, and Christine Gail Smith, punitive damages were awarded in connection with Count V of the Circuit Court complaint, the fraud count, and thus knowing and deliberate wrongdoing by these three defendants existed in connection with Count V. Such knowing and deliberate wrongdoing demonstrates that, as to at least part of any fraud found under Count V, fraud was done with wrongful intent as required by *Husky* for "actual fraud" to exist under § 523(a)(2)(A).

The Circuit Court judgment does not make a specific compensatory award on the fraud claim; it does not specify which portion of the compensatory damages award related to each count. Instead, it makes a single award of compensatory damages in the amount of $142,769 after entering judgment against the defendants on four different counts:  Counts V and VII ("fraud and unjust enrichment") (in the case of all four defendants) and Counts I and II ("breach of fiduciary relationship and confidential relationship") (in the case of Cinnamon Rose Smith and Christine Gail Smith).  The Circuit Court did not allocate a specific portion of the compensatory damages award to the fraud count but

14

instead awarded the entire amount as to all four claims together. Because of the imprecise way the judgment is worded, it is impossible for me to discern exactly what portion of the $142,769 judgment for compensatory damages is attributable to the judgment on the fraud count and what portion to the judgment on the other counts.

Because of the existence of a punitive damages award as to the fraud count, there must have been *some* compensatory award on the fraud count, *see Caldor, Inc. v. Bowden*, 625 A.2d 959, 973 (Md. 1993), but any attempt to determine the exact amount would be speculation. The Circuit Court did, however, specifically allocate the punitive damages awards to the fraud count: for punitive damages against Christine and Cinnamon of $150,000 (jointly and severally), and for punitive damages against Frederick of $50,000. In turn, the imposition of punitive damages was based on a necessary finding of actual malice which, under Maryland law, requires knowing and intentional wrongdoing. The Circuit Court thus necessarily found that there was knowing and intentional wrongdoing. Accordingly, as noted previously, the punitive damages were awarded for fraud that necessarily was "actual fraud" under § 523(a)(2)(A) as interpreted in *Husky*, meaning fraud done with wrongful intent. Applying the test for collateral estoppel (as discussed in detail above in part III(A) of this decision), the awards of punitive damages were based on

15

findings (1) that were actually determined; (2) that were
necessary to impose punitive damages; (3) that are the same
findings necessary for a determination of nondischargeability
under § 523(a)(2)(A); and (4) as to which the defendants had a
full and fair opportunity to litigate.  Collateral estoppel thus
applies to hold that the elements of § 523(a)(2)(A) have been
established with respect to the existence of a debt for property
obtained by actual fraud.  The punitive damages themselves,
imposed with respect to such actual fraud, thus qualify as debts
for property obtained by actual fraud, and thus are
nondischargeable under § 523(a)(2)(A).  *See Cohen v. de la Cruz*,
523 U.S. 213, 218-19 (1998) (punitive damages awarded for having
obtained property by actual fraud are within the § 523(a)(2)(A)
discharge exception).  Accordingly, I will grant partial summary
judgment declaring that the punitive damage awards against
Cinnamon Rose Smith, Christine Gail Smith, and Frederick Shawn
Smith are nondischargeable under § 523(a)(2)(A).  The
nondischargeable debts also include postjudgment interest on the
punitive damages judgments, and any costs recovered with respect
to the litigation of the punitive damage claims.

      In the case of Jason Todd Smith, no punitive damages were
awarded, so there was no finding by the Circuit Court of knowing
and deliberate wrongdoing.  In other words, there is no evidence
of factual findings made by the Circuit Court which would support

16

Auton's § 523(a)(2) fraud claim against Jason Todd Smith. Without such evidence, this court is unable to determine that the facts alleged by Auton as supporting nondischargeability under § 523(a)(2)(A) were actually determined and decided at trial by the Circuit Court. Collateral estoppel obviously cannot apply as to him.

C

In Count Two of his adversary complaint, Auton brings a claim under § 523(a)(4), which provides that a discharge does not apply to a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Auton has styled his claim as one for "breach of fiduciary duty" so I will construe his claim as one of fraud or defalcation while acting in a fiduciary capacity (and not embezzlement or larceny).[3] As with his § 523(a)(2)(A) claim in Count One, Auton relies solely on the collateral estoppel doctrine in his summary judgment motion to seek a determination of nondischargeability. As already discussed, Auton must base his collateral estoppel argument on the Circuit Court's findings, while his only citations to the trial record are to the Circuit Court's order and the transcript of the Circuit Court's oral decision. The judgment does not have

_____

[3] Even if I did not so construe his claim, I would still reject Auton's collateral estoppel argument because he provides no evidence that the Circuit Court made findings with regard to embezzlement or larceny.

17

any pertinent findings of fact, but the transcript does have
comments that may be relevant to this claim.  Those portions of
the transcript are:

> She [Betty Auton] entrusted Christine Smith and Cinnamon
> Smith with her finances, and they testified and I accept
> how close they were with Betty Auton and what they did
> for her, but that is, as Mr. Flynn said, is the essence
> of the case. You all became in a confidential
> relationship with her. You were in effect trustees for
> her. And when these monies go out like this from that
> account the burden shifts to you to prove by clear and
> convincing evidence that this was her will, her desire,
> and you've not even come close to that. In fact, there's
> nothing here to that.
>
>           *     *     *
>
> However, as to Cinnamon Smith, Christine Smith it's
> obvious that they have been moving these monies around,
> utilizing Betty Auton's funds as if they were their own.

Transcript, 3:16-25, 4:1, 6:4-7 (Exh. to Defs.' Mot.).  These are
the only comments made by the Circuit Court that are relevant to
Auton's fiduciary capacity claim.  These are conclusory comments,
not factual findings, and they are insufficient for the
application of collateral estoppel.

A plaintiff alleging defalcation or fraud by a fiduciary
must show: (1) the establishment of an express trust (2) that the
debtor acted in a fiduciary capacity, and (3) the debt is based
upon the debtor's fraud or defalcation while acting as a
fiduciary.  *Fleming v. Gordon (In re Gordon)*, 491 B.R. 691
(Bankr. D. Md. 2013) (citing *Pahlavi v. Ansari (In re Ansari)*,
113 F.3d 17, 20 (4th Cir. 1997)).

18

Whether a person has acted in a fiduciary capacity is a question of federal law. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986). A fiduciary relationship is defined more narrowly in dischargeability determinations than under general common law; "the broad, general definition of fiduciary, involving confidence, trust, and good faith, is not applicable in dischargeability proceedings under § 523(a)(4)." *Chao v. Duncan (In re Duncan)*, 331 B.R. 70, 80 (Bankr. E.D.N.Y. 2005); *see also Jacobs v. Mones (In re Mones)*, 169 B.R. 246, 255 (Bankr. D.C. 1994). In addition, for a fiduciary relationship to exist under § 523(a)(4), an express or technical trust must be present. *Fleming v. Gordon (In re Gordon)*, 491 B.R. 691 (Bankr. D. Md. 2013); *Lawrence Steel Erection Co. v. Piercy (In re Piercy)*, 140 B.R. 108, 114 (Bankr. D. Md. 1992).

I then turn to state law to determine whether an express trust was created. *Mones*, 169 B.R. at 255. Under Maryland law, "express trusts are created by the direct and willful acts of the parties, by some writing, or deed, or words expressly evidencing the intention to create a trust." *From the Heart Church Ministries, Inc. v. African Methodist Episcopal Zion Church*, 803 A.2d 548, 567 (Md. 2002) (citing *Levin v. Security Financial Ins. Corp.*, 230 A.2d 93, 98 (Md. 1967); *Sieling v. Sieling*, 135 A. 376 (Md. 1926)).

The transcript reflects that the Circuit Court concluded

that Christine and Cinnamon Smith were in a "confidential relationship" and were "in effect trustees." Auton has provided no evidence that The Circuit Court actually determined that an express trust was established prior to the misconduct and that Christine and Cinnamon Smith were trustee of that trust.[4] In fact, a finding that they were "*in effect* trustees" implies that they were not *de jure* trustees of an actual express trust. The Circuit Court's conclusory comments fall well below actually determining the facts required to prove a § 523(a)(4) claim, and thus collateral estoppel cannot be invoked to prove such facts.

The judgment itself also is insufficient evidence that the Circuit Court actually determined the factual issues relevant to a § 523(a)(4) claim, despite Auton's assertions to the contrary. Because the state and federal bankruptcy definitions of fiduciary differ, a judgment on a state law breach of fiduciary duty claim is insufficient evidence that the Circuit Court actually determined that the defendants were fiduciaries under the narrower definition applicable to a § 523(a)(4) claim. In addition, Auton's Circuit Court complaint did not allege the existence of an express or technical trust, and therefore the Circuit Court, by entering judgment in Auton's favor on counts

---

[4] Because of this, I do not need to reach the question of whether the Circuit Court actually determined that Christine and Cinnamon Smith committed fraud or defalcation for purposes of Auton's § 523(a)(4) claim.

one and two (the counts in which Auton alleged a breach of fiduciary duty) would not necessarily have determined that an express or technical trust had been established prior to the alleged misconduct, as required to prove a § 523(a)(4) claim.

Moreover, as with the fraud claim, the Circuit Court judgment did not make a specific award on Auton's breach of fiduciary duty claim but rather awarded compensatory damages as to all four counts in a lump amount, making it impossible to determine what amount, if any, is attributable to the relevant counts of Auton's Circuit Court complaint.

Therefore, for all these reasons, collateral estoppel cannot be invoked to make a nondischargeable determination with respect to Auton's claim pursuant to § 523(a)(4).

IV

The adversary proceeding complaint did not include a count under 11 U.S.C. § 523(a)(6), but Auton argues in a footnote in his summary judgment motion that the punitive damages portion of the judgment is nondischargeable under § 523(a)(6), which excepts from the effects of a chapter 7 discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

A

Section 523(a)(6) will not apply to any discharge that Frederick Shawn Smith may receive in his chapter 13 case pursuant

21

to 11 U.S.C. § 1328(a) (and would not apply to any chapter 13 discharge that Christine Gail Smith might receive in a future chapter 13 case).[5]  Under 11 U.S.C. § 1328(a)(8) there is an exception to a § 1328(a) discharge for a debt "for . . . damages . . . awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused *personal* injury to an individual . . . ." (emphasis added).  In his Circuit Court complaint, Auton pled with respect to Counts V and VII that "[a]s a result of Defendants' actions, Plaintiff has suffered economic loss, financial deprivation, **emotional trauma, pain and suffering**, and other injuries" (emphasis added).  A judgment for emotional trauma, pain and suffering would be a judgment for personal injury.  However, the Circuit Court's judgment awarded compensatory damages of $142,769 based on "$111,164 from the joint savings account, $25,350 from the bonds, and $6,255 from the IRA, which was supposed to go into the account and never was and hasn't been found."  Tr. of Decision of March 28, 2013, at 4-5 ( Exh. to Defs.' Mot.).  Such an award is an award for property injury, not personal injury.  Similarly, the punitive damage awards were not based on any finding of emotional trauma or pain and suffering, but on the fact that with

---

[5] The Circuit Court did not award punitive damages against Jason Todd Smith.  If it had, § 523(a)(6) would not apply to any discharge he may receive in his chapter 13 case, for the same reasons as discussed above with regard to Frederick Shawn Smith.

22

actual malice the defendants against whom punitive damages were
awarded had wrongfully treated the late Ms. Betty Rose Auton's
assets as though those assets were their own.  Accordingly,
collateral estoppel could not apply as to a claim under § 1328(a)
even if the complaint were deemed to include a claim under that
provision.

B

Section 523(a)(6) does provide an exception to a chapter 7
discharge, which is applicable to Cinnamon Rose Smith (who has
received a chapter 7 discharge).  The adversary proceeding
complaint attached the Circuit Court order that included the
finding that with actual malice the defendants against whom
punitive damages were awarded had wrongfully treated the late Ms.
Betty Rose Auton's assets as though those assets were their own.[6]
For purposes of deciding whether the complaint would survive a
motion under Fed. R. Civ. P. 12(b)(6), the complaint would
survive based on its pleading facts showing a claim under
§ 523(a)(6) even if the complaint failed to specify § 523(a)(6)
as a basis for relief.  As noted in *Sidney S. Arst Co. v.
Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421 (7th Cir. 1994),

---

[6]  Moreover, the Circuit Court indicated at the trial that
the punitive damage awards were being awarded because the
defendants "have been moving these monies around, utilizing Betty
Auton's funds as if they were their own" (with Frederick involved
partially in doing that in comparison to Cinnamon and Christine).
Tr. of Decision at 6.

23

"the court has a duty to consider whether a plaintiff's allegations could provide relief under any available legal theory."  The complaint here alleged facts supporting a § 523(a)(6) claim if the Circuit Court's finding of "actual malice" required, within the meaning of § 523(a)(6), a willful infliction of injury done with malice.

Under one test regarding the § 523(a)(6) "willful injury" requirement, "§ 523(a)(6) renders debt nondischargeable when there is either a subjective intent to harm, or a subjective belief that harm is substantially certain."  *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1144 (9th Cir. 2002).  Under another test, "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm."  *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998).

Section 523(a)(6)'s second element, maliciousness, exists when the debtor acted in conscious disregard of the debtor's duties or without just cause or excuse, and does not require ill-will or a specific intent to do harm.  *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013).

As noted previously, punitive damages are recoverable only when a plaintiff has demonstrated by clear and convincing evidence that the defendant acted with "actual malice."  In turn, "actual malice" does not include reckless or negligent infliction

24

of injury, and requires knowing and deliberate wrongdoing.  The
adversary proceeding complaint, therefore, pled that Cinnamon
Rose Smith engaged in knowing and deliberate wrongdoing, and that
she acted without just cause or excuse.  Its recitation of the
award of punitive damages therefore plainly satisfies the
requirement that Cinnamon Rose Smith have engaged in a willful
and malicious infliction of injury.  In turn, the adjudication by
the Circuit Court necessarily included a finding that Cinnamon
Rose Smith had engaged in knowing and deliberate wrongdoing
causing injury, and that there was no just cause or excuse for
such misconduct.  The award of punitive damages was thus based on
findings establishing a willful and malicious infliction of
injury, findings that support holding that § 523(a)(6) applies if
collateral estoppel applies.

Applying the test for collateral estoppel (as discussed in
detail above in part III(A) of this decision), the award of
punitive damages was based on findings (1) that were actually
determined; (2) that were necessary to impose punitive damages;
(3) that are the same findings necessary for a determination of
nondischargeability under § 523(a)(6); and (4) as to which
Cinnamon Rose Smith had a full and fair opportunity to litigate.
Collateral estoppel thus applies to hold that the elements of
§ 523(a)(6) have been established with respect to the award of
punitive damages.  Accordingly, I will grant partial summary

judgment declaring that the punitive damage award against
Cinnamon Rose Smith is nondischargeable under § 523(a)(6).[7]  The
nondischargeable debt also includes postjudgment interest on the
debt, and any costs recovered with respect to the litigation of
the punitive damage award.

V

The defendants' motion seeks partial summary judgment on
Auton's claims to the extent he relies on collateral estoppel.
Without a full record of the Circuit Court proceeding before me,
I cannot tell if Auton will be unable to prove at trial that
collateral estoppel applies with regard to his remaining claims,
although it seems unlikely that collateral estoppel would apply
absent any new evidence of additional findings by the Circuit
Court.  For collateral estoppel to apply to a finding of another
court, the finding must have been necessarily decided.  In the
case of three of the defendants, we know that at least one dollar
of the compensatory damages had to relate to *actual fraud* because
punitive damages were awarded with respect to the fraud claim.
The award of compensatory damages may otherwise have been for
*constructive fraud* (a dischargeable type of fraud judgment).
Nothing in the record so far supports a finding that the Circuit
Court found that all of the fraud judgment was for actual fraud,

---

[7]  Auton's motion has not requested that I deem the entire
judgment against Cinnamon Rose Smith to be nondischargeable based
on § 523(a)(6).

or that the punitive damage awards related to all of the amounts
for which compensatory damages were awarded based on fraud.  In
addition, if the unjust enrichment finding supported the
compensatory award of $142,679, then there would be an issue as
to the extent to which any finding of actual fraud was
"necessarily decided" in order for collateral estoppel to apply
to any compensatory damage award.[8]  The defendants, however, have
not raised an argument in this regard.

VI

An appropriate order follows.

[Signed and dated above.]

Copies to: Recipients of e-notification of orders.

---

[8]  *See United States v. Maxwell*, 189 F. Supp. 2d 395, 404
(E.D. Va. 2002) (citing *Tuttle v. Arlington County Sch. Bd.*, 195
F.3d 698, 704 (4th Cir. 1999) (holding that prior ruling was not
"necessary" for collateral estoppel purposes where it was one of
two alternative bases for the district court's decision); *Pizlo
v. Bethlehem Steel Corp.*, 884 F.2d 116, 119 (4th Cir. 1989)
(stating that, "[w]hen a dismissal is based on two
determinations, one of which would not render the judgment a bar
to another action on the same claim, the dismissal should not
operate as a bar") (citing Restatement (Second) of Judgments
§ 20, Comment e and Illustration 4 at 173); *National Am. Ins. Co.
v. Ruppert Landscape Co., Inc.*, 122 F.Supp.2d 670, 677-78 (E.D.
Va. 2000) (finding doctrine of collateral estoppel inapplicable
in situation in which prior case did not require ruling to be
made on the issue sought to be precluded)).